In enacting Senate Bill 8, the Texas Legislature not only deliberately prohibited the exercise of a constitutional right recognized by this Court, it did everything it could to evade effective judicial protection of that right in federal or state court. Texas delegated enforcement to literally any person, anywhere, except its own state officials. The only conceivable reason for doing so was to evade federal court review under Ex parte Young. Texas then created special rules applicable only to SBA claims that make it all but impossible to protect one's constitutional rights in state court. For a single abortion, the law authorizes limitless suits in all 254 counties and provides that a victory in one has no preclusive effect in any other. Texas incentivized enforcement through awards of at least $10,000 per prohibited abortion against each defendant without any showing of injury, and it added draconian one-sided fees provisions with liability extended even to attorneys themselves. The combined effect is to transform the state courts from a forum for the protection of rights into a mechanism for nullifying them. As Respondent Dixon has said, no rational abortion provider would violate this law. While court clerks are not ordinarily proper defendants, in these Their docketing of SBA suits, which is critical to effectuate Texas's illegal scheme, inflicts Article III injury in fact and is redressable by an order barring such docketing. SBA is an abortion prohibition, but the issues before this court are far more sweeping. To allow Texas's scheme to stand would provide a roadmap for other states to abrogate any decision of this court with which they disagree. At issue here is nothing less than the supremacy of federal law. Counsel, you rely on Ex parte Young to some extent, but Ex parte Young makes clear that federal courts cannot enjoin state judges, so how do you distinguish your case from the express language in Ex parte Young? Your Honor, the language in Ex parte Young that I believe you're referring to discusses and specifically allows an injunction against the commencement of the suit, and Your Honor, I think here that supports an injunction against the clerks. It distinguishes between restraining the commencement of a suit versus a suit that after it has already been filed. So I think that that language actually supports relief against the clerks here. It's also premised, Your Honor, on there being an executive official who you could enjoin, and here the state has intentionally taken away the executive officials. But that's what the case was about. It was about enforcing an action against a party. Hence the case, the focus is on enforcement as opposed to adjudicating that enforcement. And I don't think it really distinguishes it to say, well, this isn't about that. It expressly excludes enjoining a state court. Well, Your Honor, I think it excludes enjoining the court in action after it has already been filed, but it allows for it. It says that there is a power to restrain the commencement of the suit. And I understand, Your Honor, that in that suit it was an injunction against the state official who was commencing the suit, but I don't think that it is. I think the principles underlying Ex parte Young, which are to allow a federal forum for the vindication of federal constitutional rights, would support an action here against the clerks to enjoin the commencement of the suit. I also think that that language in Ex parte Young, it wasn't a part of the section of the opinion where the court was addressing sovereign immunity. It was addressing a remedy that's available by courts in equity. And here, Section 1983 now provides that remedy. And it expressly allows suits against judges acting in their judicial capacity. But I don't think you need to reach the judges issue, Your Honor, because I think that language does support an injunction. And the principles underlying Ex parte Young. Counsel, I read your complaint, and I thought you only asked for declaratory judgment against the judges and an injunction against the clerks. Did I misread your complaint? No, you're exactly right, Your Honor. We saw it consistent with the text of Section 1983. We saw declaratory relief against judges and an injunction against the clerks. And I think that So let's go to what the harm is that you're seeking an injunction against the clerks for. Am I understanding correctly that you believe that the way this SBA is structured, that what the chilling effect is the very multiplicity of lawsuits that are threatened against you? Yes, Your Honor, that's exactly right. It is the fact there's a combination of various ways that the state has created special rules applicable only to SBA to make state courts a tool that can be used to nullify constitutional rights that have been recognized by this court. And I would point to, I think there are four essential components of SBA that the legislature created. First is it allows anyone to enforce, regardless of any injury. Second, it allows those suits to be brought anywhere in Texas, even for one abortion. So an abortion provider could face suits all across the state for a single abortion multiplied by all the additional abortions that are provided. And then there's no preclusive effect, even if an abortion provider wins a case about that abortion. They still have to continue to face suit after suit after suit because there's no preclusive effect. It turns the provider or the abortion supporter into a permanent defendant. Counsel, I don't want to interrupt your answer to Justice Sotomayor, but just to pick up on a point that you made, and maybe you could clarify this before you finish answering her question if you haven't finished already. Isn't it the case that the Texas Constitution requires a plaintiff to show injury in fact in accordance with the same standard that SBA made? I think maybe the first point was that SBA allows anybody to sue whether or not that person has suffered any injury. Is that accurate under Texas law? I think the answer is unclear, but in the United States case, in the preliminary injunction hearing, Texas, the lawyer for the state told the district court that Texas law is quite different from federal law on the question of how standing and private interests versus public interests work. They said that at page 49 of the transcript of the preliminary injunction hearing. But hasn't the Texas Supreme Court said that they follow the same standard as the federal court? Haven't they said that? They said that recently, but Texas courts are not bound to follow this court's precedence on Article III. No, of course they're not, but they are bound to follow the state's Supreme Court, are they not? They are, but the Texas Supreme Court has never addressed a law like SBA. And clearly the legislature thought that it could create standing by creating a cause of action and give everyone an injury. But even if that's correct, even if an injury is required, it wouldn't stop uninjured people from filing suit, and it is the filing of the suit that is the point here. Well, counsel, the matters that you're talking about now, they're essential to your argument, right? You agree that it would be adequate to have federal court review at the end of the state process, but for the chilling effect that you're talking about, right? I think not in the way that SBA is structured. I mean, if there is review from this court holding that the law is unconstitutional, that would be adequate. But I think that there are a number of... Review at the end of the day, right? When we have a final judgment from the state judiciary. But there are a number of reasons that that is unlikely to happen. First of all, if you win in the trial court, if the state trial court says that the law is unconstitutional, then getting broader relief depends on your opponents appealing that to the intermediate court, to the Texas Supreme Court, and that the proponents of this law are acting very strategically. Well, that's true in any case, right? I mean, if you get relief in the trial court and your opponent doesn't appeal, there's no real reason for you to seek relief in the Supreme Court, is there? But in the normal case, if you win that case, if you win, then you don't have to continue litigating that. Here, SBA says there is no preclusive effect. I know you're getting back to the argument that there is a chilling effect. I'm asking for your position in the absence of that. If it's just a regular type of case, surely it's adequate to have federal review at the end of the state court process. In the normal case, yes, that is correct. I agree with that. That, you know, in a normal court lawsuit, that is adequate. It is the chilling effect that is, that in this case is created by the combination of delegation of enforcement of a public policy to the general public at large, and there's no preclusive effect, and all of the special rules that are created in order to turn the Texas state courts into a tool that can be used to nullify the exercise. Even apart from these procedural requirements that you're talking about, I'm wondering if in a defensive posture in state court, the constitutional defense can be fully aired. And I'm wondering not for this reason. The statute says that a defendant may not establish an undue burden, and this is even assuming that the defendant can satisfy third-party standing rules because the statute says it has to be Craig v. Boren, not the regular abortion third-party standing rules, but it says that a defendant may not establish an undue burden under this section by, and this is D-2 in this section, arguing or attempting to demonstrate that an award of relief against other defendants or other potential defendants will impose an undue burden on women seeking an abortion. So I take that to mean that a defendant can only say an award against me would place a I think that's right, Your Honor. And the title of that section that you're referencing is called Limitations on Undue Burden Defense. Clearly, it's not only the procedural rules that the Texas legislature has tried to change the substantive rules that this court applies to protect the women. So does that mean you cannot get full review even on the back end if it goes up through the Texas Supreme Court and up to us the way the statute is structured? We would have an argument, Your Honor, and we would obviously make the argument that that provision of the Texas law is unconstitutional because it conflicts with this court's precedents in Casey. But, Your Honor, it's unclear exactly how the Texas courts would apply that, whether they would follow the undue burden standard. And clearly what the legislature was trying to do was to limit the undue burden defense. Wouldn't they be obligated under the Supremacy Clause to apply the federal constitution, as opposed to a provision of a state statute that purports to preclude them from considering a constitutional claim? They would, Your Honor. So then your argument is that they would not abide by the constitution? I'm not suggesting that they would not abide by the constitution. What I'm saying is that even if you have to prove that undue burden defense in every single case, we wouldn't say if the state of Texas had passed a law making it a criminal violation to provide an abortion after six weeks, that there's no problem because you can simply raise undue burden at trial, at your criminal trial. This court's precedents allow pre-enforcement relief, allow you to come into court and say, I don't need to violate the law in order to first raise my constitutional defenses. I can come into court under Ex parte Young in Section 1983 and seek a ruling that my constitutional rights are being violated. We have laws that preclude the enforcement of judgments in which process has been denied, where you're not given an opportunity to air your claims. Justice Barrett pointed out to a provision of this law that says you can't present this claim this way. All right? What the judges will do is irrelevant. I thought the essence of your argument was that the law as law is precluding you from using the judicial system as a neutral arbitrator. That's right, because even if we raise a successful undue burden defense in one case, you have to do it again in case after case after case. Well, it doesn't really matter. The point is that it's not a neutral arbitrator. It's an enforcer being used as an enforcer. I agree with that, Your Honor. But, Your Honor, here, the point is that regardless of the outcome of the case, it is the threat of filing an unlimited number of cases in counties all across the state where there is no preclusive effect and where the state has even made it so more difficult to get an attorney by making attorneys liable for the other side's fees. All of that creates a threat. I was just going to say that the combination of all of those factors together creates a chilling effect that is preventing the exercise, and that is under this Court's precedence an irreparable injury. Can we talk about ex parte Young a little bit? You make the point correctly that usually you can get pre-enforcement review in federal court when it's enforced, a law is enforced by a state prosecutor or state executive official. That's longstanding law. The issue here is different because it's private enforcement in state courts, and that raises a novel issue for us about how to apply ex parte Young. The ex parte Young principle is that those who enforce the law can be enjoined or can be sued in pre-enforcement suits in federal court. But as Justice Thomas points out in the two paragraphs at the top of page 163 of ex parte Young, state courts seem to be carved out from that. So that's the tension. I think you identified it. The principle of sticking point in trying to sort this out. One answer you didn't give is that subsequent law says that when state courts entertain private civil suits, they enforce state law. I don't want Shelley v. Kramer being the most prominent landmark example of that. Can you fill in the gaps there and explain to me how we should think about the ex parte Young language in light of how we conceptualize state court enforcement of private civil suits now? Yes, Your Honor. I think that the most straightforward way to apply ex parte Young or to allow relief here under ex parte Young is against the clerks, as I've said, because that would stop the commencement of the suits and wouldn't create any of the problems raised in ex parte Young itself about stopping the adjudication. Sorry to interrupt, but I think Justice Thomas' question was also getting at, though, take the point, distinguish the judges from the clerks. Are the clerks subsumed within that language in ex parte Young? You're saying we shouldn't do that, and I just want to hear your answer, why shouldn't we do that? That's right. I don't think so, because that language distinguishes between the power to restrain commencement of suits, which I think that language actually supports relief against the clerks, versus whether courts should restrain a case brought before it, which would mean that would refer to the judges here. Now I do think in subsequent decisions of this court, you're correct, there are instances where the court has recognized in Pulliam, in Mitcham, where relief against state judges and in fact Congress recognized in section 1983, in the text of section 1983, that judges can be proper defendants, so we brought that declaratory relief. Well, it's more than just that, frankly, because ex parte Young depends on enforcement. I think that's the key word. Well, it turns out in Shelley v. Kramer, the word enforcement's in there, by my count, 27 times, give or take a couple, to describe what state courts do when they adjudicate private civil suits. That's right, and in fact Judge Jackson at a press conference said he's the enforcer of the laws in East Texas, and I think that's clearly, it's clearly correct that when the court issues an injunction, a mandatory injunction, or issues a monetary penalty, what the court is doing is enforcing SBAs. A judge may be enforcing a state law when the judge renders a decision based on that state law and provides relief based on that state law, but do you think a judge is enforcing a law when the judge merely begins to adjudicate the case? I think one way of potentially looking at it is that by requiring, so yes, in a sense, and one way of looking at it is that by requiring litigants to be in court and requiring them to make filings and appear in court, because here it would be multiplied in courts across the state. Really? Suppose a legislature enacted a statute that said, henceforth, people of a certain race may not make any public statement, and someone brings suit under that. The judge begins to enforce that just by entertaining the suit? I think, in certain circumstances... Even if it's certain that at the end of the case the judge is going to say, no, this is an unconstitutional statute. I think in certain circumstances that even, in a situation like SBA, where the point is the filing of the suit and the point is the making you appear in courts all across the state, this is, yes. I'm sorry, Mr. Spicer. Were you finished? I'm taking up his argument. Look, you say judges, at least in many circumstances, enforcer. There are four billion court suits in the United States, okay? And probably in three billion of them, somebody thinks something's unconstitutional. All right, so can they all sue the judge? Anybody who goes into federal court sues the judge? In state court? All right, what's the response? Maybe in other cases, you've read their briefs. You understand their argument. What's your response to it? The response is that under the rule that we are advancing here is that where a state is trying to nullify the exercise of a right, a constitutional right that's been recognized by this court, by delegating enforcement to the public and taking away the normal, ordinary executive officials, and then also creating special court rules. In order to turn the court system, we're not saying that judges or clerks are intending to do anything here, but it's the rules that have been created by the Texas legislature that turn courts into a weapon that can be used to nullify constitutional rights. You might appreciate that, the idea of suing the judges that sort of got our attention, but is there even a case or controversy in such a suit? I understand the position of the plaintiff, exactly what he or she wants. The judge is not necessarily adverse to that. The judge's role is to issue a decision. The idea of someone who's going to decide a question, that person is not automatically adverse to the person who asked the question, and that seems to me to raise a real problem under the case or controversy requirement. So I think there is a case or controversy. If I could address the clerks first, that there is adversity in a case or controversy against the clerks, Your Honor, because the clerks are saying they have a duty under state law to docket a petition, to issue summonses, and we are saying that even the initiation of an enforcement proceeding violates constitutional rights, and that they should not docket. That is adversity. It doesn't matter whether the clerks agree with the law or want to defend the law. The clerk performs a ministerial function. Somebody shows up with a complaint, wants to file a complaint, and assuming the formal requirements are met, the clerk files the complaint. The clerk doesn't have the authority to say, you can't file this complaint because it's a bad complaint. What if the judge, the presiding judge in a particular jurisdiction said, okay, fine, you don't want the clerks filing these things. If anybody shows up with a complaint, what do you do? Well, Your Honor, that's why we've asked for declaratory relief against the judges, but I think that I do think that relief against the clerks... This isn't about the clerks, is it? No, I do think that relief against the clerks, Your Honor, would alleviate most of the harm and would thaw the chill and would allow abortion providers to understand, and in fact, the ministerial nature of their docketing is exactly what makes them a proper defendant here. We know that clerks will docket every SBA petition that is brought forward, and the state has encouraged, has incentivized enforcement by offering $10,000 or more bounties, effectively, and by lowering the barriers of entry for people across the state by allowing anyone to sue without having to show an injury, by allowing them to sue in their home county, and to not have to worry about paying the other side's attorney's fees and even get their own attorney's fees paid. So we know there will be enforcement, and the ministerial act of the clerks' docketing is exactly what... The state has made the clerks an essential role in this machinery that they have created to nullify constitutional rights that have been recognized by the state. Counselor, are you arguing that there's a constitutional right to pre-enforcement review? And if so, how do you reconcile that with Sheldon v. Sue? So our first argument is actually that Congress created the right in Section 1983. Assume we don't... Assume I don't buy that. So I think that, yes, there is, and Ex parte Young recognized that in these circumstances where it's not going to be... Where the penalties are so severe, and where there is... It's difficult to find someone who is willing to even violate the law for a test case. I think in fact there is a procedural due process violation. It's... Okay. I think there is language in Ex parte Young that favors you, and I don't think Thunder Basin... I think Thunder Basin assumes that there might be some circumstances in which pre-enforcement review is constitutionally required. In this context, presumably that might happen in state courts. Even if there is some sort of constitutional right to pre-enforcement review, need it be provided by a federal court? I'm sorry, I missed the last part of your question. If there is a constitutional right to pre-enforcement review, on your reading of Ex parte Young, does it have to be provided by a federal court? I think Ex parte Young does support in federal court, yes, in part because state court review in circumstances like in Young and here is inadequate for a number of reasons that I'm happy to get into. Thank you, Counsel. Justice Thomas, anything further? Justice Breyer? I'd like to just be sure I have this. Your basic point, I take it here, as we've discussed it, is this kind of a private lawsuit is not an ordinary tort suit. Okay? So I've tried to write down the reasons, and I want you to add anything I leave out. One, anybody can sue. Well, okay, debatable. Two, anywhere in Texas. Texas is a bigger problem than Rhode Island there. Three, it has no preclusive effect. Jones 1 sues the clinic, clinic wins, Jones 2 through 4000 can sue. Four, the attorney's fees are very heavy. Five, and they don't apply both ways. Five, the penalty of $10,000, et cetera, is heavy. And six, you are limited if you are a defendant as to which kinds of defense you can make in respect to there being an undue burden, which is a problem because most of the undue burden cases speak generally of the effect of the law of the state, not on this particular defendant. Okay? I have six that I caught from you. Is there a seventh? I have two more, Your Honor. Okay. The first is that damages are not tied to the amount of any harm, which would be normally the case in a tort suit. And the second one is that SBA provides for a mandatory injunction if there is a successful claimant to prevent further violations, not to prevent further harm to the claimant. It's not tied to, the mandatory injunction is not tied to the harm. Thank you. Justice Alito? Suppose this happens. A woman shows up at the clerk's office and says I want to file a pro se complaint against the doctor who performed my abortion because it caused me physical and or emotional harm, and I want to sue under SB 8 because I want actual damages, but I also want the $10,000 in liquidated damages. And you say the clerk should say what? The clerk should reject the filing of that lawsuit. Thank you. Justice Kagan? If I could turn technical for a minute. Should one of your arguments be that the damages prevail or another argument in support of your position prevail, it doesn't matter exactly which argument it is to me. What exact relief are you requesting? We are requesting an injunction. So we have a pending class certification motion for a defendant class against the clerk. So we would be requesting an injunction against the commencement or the end of the statute, as well as injunctive relief against the state executive officials for their residual authority to enforce SB 8. Tell me if I'm wrong on this. Just the procedural morass we've got ourselves into with this extremely unusual law is that we would really be telling the 5th Circuit, again if your position prevailed, that the district court had to be allowed to continue with its preliminary injunction ruling. Is that correct? Is that what we would be doing? I think technically what you would be doing is affirming the district court's denial of the respondent's motion to dismiss, which would then allow us to proceed to our pending preliminary injunction motion and pending summary judgment motion and pending class certification motion. And while the district court does all that, which we would be saying the district court should go do, have you made a motion for interim relief? I mean I know that there's a motion for interim relief in the United States v. Texas case, but if you were to prevail, we wouldn't even have to rule on the United States v. Texas case. That's very complicated for other reasons. We could just sort of leave that be. But the motion for interim relief is in that case, not in your case. Am I wrong about that? Or do you have a motion in your case that would enable interim relief? We haven't filed such a motion, but I would ask the court now that if it is not going to reinstate the injunction in the United States case, that it issue interim relief now against enforcement, because the law is patently unconstitutional. And if these are the correct defendants, then enforcement should flow. So we would ask the court to issue such interim relief. Thank you, Mr. Howard. Would the Chief permit me a follow-up on that? Sure. Counsel, if we vacate the Fifth Circuit's order, orders basically staying the district court proceedings, presumably that would vacate its denial of the stay that you had asked from the district court order. If we reinstated the district court order, you would have a stay in place, wouldn't you? So technically there are two stays in place, one that was issued by the district court and one that was issued by the Fifth Circuit. And if you were to vacate those stays in the interim, then we would be able to go back to the district court and ask for an interim relief in the district court. Were you granted a stay of enforcement of the law by the district court? We have never gotten to that point, Your Honor. Ah, okay. Thank you. I forgot. Thank you. Justice Gorsuch? I do have a couple of questions. On chilling effect, do you agree that other laws often have chilling effects on the exercise of constitutionally protected rights that can only be challenged defensively? Not to this extent. But do you agree that there are laws, defamation laws, gun control laws, rules during the pandemic about the exercise of religion that discourage and chill the exercise of constitutionally protected liberties? Yes. And that they can only be challenged after the fact? I'm not sure that all of those laws could only be challenged after the fact, but there may be some laws. Certainly there are certain circumstances where that's true, right? That's probably correct. Okay. So it's a line drawing between those cases and your case in your mind. Yes. And then on the relief, am I understanding you correctly that relief against the clerks you think is sufficient for your purposes? I think that it is, it would go most of the way to getting the relief that we need in order for abortion providers to begin providing again. We do think that it is also appropriate for a declaratory judgment against the judges, but I think that the clerks, their relief against the clerks would... So if that, and you agreed previously, they're under obligation or state law to file everything that comes in without looking at its contents or judging its contents, right? Yes. Although I think that there are circumstances in which, for example, a judge may direct that a particular person may not file because they have filed too many frivolous lawsuits, for example. But that's pursuant to a judicial order, but otherwise they're obliged to file everything that comes their way. Yes. And so you say the constitution overrides that requirement in this case? Yes, we believe so. And what about the cases where SBA could be constitutionally applied, consistent with Roe and Casey? Should they file those lawsuits? Should they try and determine whether, which side of the line they fall on? I mean, post-viability, not for medical reasons, you know, that would meet a Roe and Casey test. Are they supposed to apply Roe and Casey themselves? I don't think, no, I think that they should be enjoined from docketing any SBA lawsuits because SBA... Including constitutional ones. But I think that that is, that would, the existence of those claims is not showing the exercise of constitutional rights here, so, but I do... Exactly. But they've enjoined them anyway. But I do, yes, because, and that's consistent with the relief that has... And if a clerk goes ahead and dockets a permissible non-chilling petition, a federal judge could find him in contempt and put him in jail, right? I think that would be, there are standards for criminal due process, there are due process standards... But subject to those due process standards. Subject to those standards, but I think that those would be extremely difficult to meet for the most part, and we believe that clerks will follow the injunction in good faith. Justice Kavanaugh? Couple follow-ups to Justice Kagan's question. I think you also had a pending TRO in the district court with the preliminary injunction and the class certification, is that accurate? Yes. And then to follow up on the Chief Justice's question, which I think reflects from my viewpoint a change in your reply brief, or maybe, I don't want to say change, shift in focus in the reply brief to the clerks from the judges and clerks. And if I'm understanding you correctly you're saying that ex parte Young principle should apply to both, but the adverseness issue may be more serious with judges, and therefore you focused on the clerks. Is that, that's how I read your reply brief, because it was noticeable to me. I think that's right, Your Honor, that it is easier to say that we are adverse to clerks because the filing of the lawsuits, which is the point here to create the interim effect and to show the constitutional rights is the filing of the lawsuits, and that creates a sharp adversity to the clerks who are just performing their ministerial duty and not adjudicating anything. Okay, and then last, to follow up on Justice Breyer's question, he mentioned the floodgates issue which the state has raised, and obviously there are already a lot of ex parte Young suits in federal court to enjoin the usual state laws that are assertively unconstitutional, but the claim by Texas is that this will increase the load. I'll give you another chance to respond to that. I don't think that's correct. This is an exceptional, this is unprecedented, and under the principle that we're advancing, it would not allow suits against clerks to challenge most laws. This is a unique law created because the state has delegated enforcement and has taken away the normal executive officials who would enforce and has weaponized the state court system into a tool that can be used to abrogate constitutional rights, so this is a unique situation. I think the real danger is if this court does not allow the suit, then that will provide a road map for other states to abrogate other rights that have been recognized by this court. Thank you. Justice Barrett? Thank you, counsel. General Stone? Thank you, Mr. Chief Justice, and may it please the court. Petitioner's pursuit of an injunction suffers from two fundamental problems. First, none of the individuals the petitioner sued are appropriate defendants under well-established Article III inequitable principles. Second, petitioners ask for an expansion of access to the federal courts that only Congress, and not this court, may provide. Petitioners' Article III inequitable problems begin with what they really want, an injunction against SB-8, the law itself. They can't receive that because federal courts don't issue injunctions against laws, but against officials enforcing laws. No Texas executive official enforces SB-8 either, and so no Texas executive official may be enjoined. Petitioners then turn to state court judges and state court clerks, and apparently in this court now narrow their focus to state court clerks, but even they don't suggest that either judges or clerks act unlawfully in the ordinary course by adjudicating a case or receiving a complaint. So petitioners' harms are not fairly traceable to any allegedly unlawful behavior by state court judges or clerks. And this court recognized in Ex Parte Young itself that such an injunction would be a violation of the whole scheme of our government. State judges are presumed to faithfully apply federal law in this court's decisions. If they do not, this court may exercise appellate review. That is exactly how federal constitutional defenses are presented and adjudicated all the time. If Congress believes it needs to protect petitioners' rights, then that is a matter for Congress, not a basis to alter bedrock doctrines organizing the federal courts. I welcome the court's questions. Mr. Stone, why wouldn't you consider the SB-8 plaintiffs to be sort of a private attorney's general? If the attorney general or other state officials don't enforce the law, why would it be that unusual to consider them as acting in concert with the state to enforce a state-preferred policy? Two points, Your Honor. First, every tort action undoubtedly advances a state-preferred policy. The reason why they're not acting in concert with or cannot be called agent is because they're not a private entity. Well, but usually when you think of traditional torts, there is a duty, there's an injury to the individual. It's a private matter. There is no requirement here that there be an injury to the plaintiff. Your Honor, the Texas Supreme Court has followed Article III requirements in terms of injury in fact that doesn't need to appear on the face of the defendant. So what would that injury be under SB-8 if it's an injury in fact? One example could be akin to the injury suffered in the tort of outrage where an individual becomes aware of an uncomplied abortion and they suffer the sort of same extreme emotional harm. That would ground an Article III injury for purposes of Texas law. That would be sufficient to satisfy the Texas Article III style screen that addresses some of my friends' on the other side's concerns about an unlimited set of lawsuits or that anyone could possibly bring an SB-8 action. Congress passes laws all the time that don't expressly require that individuals show, for example, express ability. But nonetheless, this Court says those are fundamental requirements of Article III and the Texas Supreme Court traces that same requirement to its own constitutional analog, the open courts provision. Forgive me, but I don't recall an outrage injury. What would that be? You said extreme outrage. That would be the injury. Well, the injury would be akin to the one suffered in a tort of outrage where a person witnesses something that essentially is defined to be so extreme an outrage it's causing extreme moral or otherwise psychological harm. Give me an example of that. An individual discovers that a close friend of theirs who they'd spoken with about pro-life issues and about abortion has chosen instead to have a late-term abortion in violation of SB-8 and they were very invested basically in that child's upbringing, the child's coming into being. To the extent to which there's going to have to be a tighter nexus or what's a sufficient injury in fact is going to be something that the Texas courts have to develop in the first instance. And of course, there's going to be some tether between a real world, not just an offense, but sort of grievous offense that we underline, that we understand underlies IID as a tort and still nonetheless has a real world harm. Thank you. I was just going to ask, assume that the bounty is not $10,000 but a million dollars. Do you think in that case the chill on the conduct at issue here would be sufficient to allow federal court review prior to the end of the state court process? No, Your Honor, because that wouldn't affect either the Article III or sovereign immunity problems in this case. Undoubtedly, it would increase the chill the same way that individuals who are exercising either protected or arguably protected conduct in a host country. As I understand it, the only way in which you get federal court review is of course for somebody to take action that violates the state law and then be sued under the law and then have the opportunity to raise their defense in federal court eventually. And you're saying that somebody is going to undertake that activity even though they're going to be subject to suit for a million dollars repetitively because that doesn't exercise a chilling effect? That's not what I'm saying at all, Your Honor. What I'm saying is it doesn't expand access to the federal courts. There is still pre-enforcement review, I might note. There are currently fourteen pre-enforcement review challenges pending in a multi-district litigation in the United States. So I'm not saying that you can't have federal court pre-enforcement access. No, that wouldn't change the Article III or sovereign immunity doctrines in play here. And that might very well be a reason why Congress could be moved to expand access to the federal courts either through the ordinary courts or by using their Section 5000 of the Fourteenth Amendment. But even if the amount of the sanction, again, I agree with you, a million dollars would be tremendous. We could increase it further. No number would suddenly cause the federal courts to become more open. It's not a question of the federal courts being more open. It's a question of anybody having the capacity or ability to go to the federal court because nobody is going to risk violating the statute because they'll be subject to suit for a million dollars. That takes a lot of fortitude to undertake the prohibited conduct in that case. And under the system, it is only by undertaking the prohibited conduct that you can get into federal court. Well, Your Honor, individuals, again, to the extent that we're dealing with the sorts of very high stakes, prohibited conduct, fine sanctions, et cetera, I might add this is specifically a damages action. It is capped at much less than that. That is a significant My question is what we call a hypothetical. Of course, Mr. Chief Justice. But nonetheless, an individual facing extreme sanctions still nonetheless often has to go through state court systems to vindicate their federal rights. Individuals are charged with possessions of firearms in states like Illinois and New York, and they face multiple year incarceration stints as a possibility of trying to exercise their Second Amendment rights. It is in fact the case that constitutional rights are litigated right now with very severe potential sanctions for going through the state courts and with no ability to go to the federal courts before essentially that pre-criminal process ends. Why does the SBA allow plaintiffs suing abortion providers to sue anywhere in the state? That's not the normal way venue works in Texas, is it? It's not, Your Honor, and undoubtedly there are a variety of individual, a handful of individual procedural rules inherent to SBA that are designed to favor this cause of action the same way that there are some designed to favor causes of action like bringing a suit under the antitrust laws or under 1983. Happy to stipulate to that. But those, to the extent that they became extraordinary, if anything, might sound in a procedural due process claim, which my friends here aren't bringing. They're bringing a substantive due process claim to SBA and its liability itself, and they're attempting to cash that out through some form of enforcement against first Texas officials and then court clerks and so on and so on. I might point out, turning specifically to the assertions my friend on the other side has said regarding court clerks, that it's actually not even clear that injunctive relief against a court clerk would give him what he wants, because under Texas Rule of Civil Procedure 22, a petition is deemed, filed upon receipt by the clerk, so the clerk doesn't have the opportunity to reject that petition. It would obviously be a question of Texas law in the event that this court interceded and essentially... Can I go back for a second from detail to the sort of bigger picture, which stuck in my mind when I read all this roadmap. That should call up a lot of arguments. From the beginning, and I thought of Holmes. Two statements. First, Holmes, remember, had seen John C. Calhoun's theories of nullification, interposition, destroyed really by the Civil War. You read the arguments and said this is sort of like that. Holmes said this, I do not think the court here lost our power to declare an act of Congress void. I do think the union would be imperiled if we could not make that declaration as to the laws of the states. All right? Keep that in mind. Now, Holmes was on the court for ex parte young. That court said to await proceedings against the company, which is the equivalent of the clinics and the women here, in a state court, and then obtain review in this court, would place the company, i.e. women in clinics, in peril of large risk and its agents in great risk of fine and imprisonment, which you just heard, the equivalent. This risk, the company, ought not to be required to take. Now, why doesn't Holmes' statement, in your opinion, illustrate what is the underlying problem here, generally speaking? And why doesn't ex parte young point the way towards, not precisely, but point the way towards an answer? Two points, Justice Breyer. The latter being what you're describing would be something of an expansion of ex parte young, as I think even my friends on the other side concede, as this court noted that an injunction against the courts themselves through the ex parte young device would have been a violation of our whole scheme of speaking about an expansion from a post-judgment creditor's ability to disdrain a debtor's assets, moving to a pre-judgment creditor's ability to do so. That was simply too great of a novel, equitable innovation for this court to be able to permit itself to essentially innovate. To do something that would have been understood in ex parte young, in the very same opinion, as a violation of our whole scheme of government, is surely a much greater innovation. And if this court is going to stand by its word... General Stone, I think what Justice Breyer is suggesting is that the entire point of this law, its purpose and its effect, is to find the chink in the armor of ex parte young. That ex parte young set out a basic principle of how our government is supposed to work, and how people can seek review of unconstitutional state laws. And the fact that after, oh, these many years, some geniuses came up with a way to evade the commands of that decision, as well as the command that the broader, even the even broader principle that states are not to nullify federal constitutional rights. And to say, oh, we've never seen this before, so we can't do anything about it. I guess I just don't understand the argument. Let me speak to the latter point. You're raising Justice Kagan first, and then turning back to the ex parte young one. This statute on its own terms specifically incorporates as a matter of state law, the undue burden defense as articulated by this court in KC and subsequent cases. Now, there have been some previous questions regarding whether or not it has incorporated that in every particular regard. There's a separate provision of that law that specifically says that nothing in section basically prohibits individuals from asserting their constitutional rights. And so to the extent that the Texas legislature has either imperfectly or in an incomplete way recorded as a matter of state law this court's recognition of the KC right, individuals may still erect that right fully and completely. Nothing in this law even pretends that Texas courts could evade that, because it can't. Well, when it said that, their rights, I took that to be, say, their First Amendment rights. If you had somebody who was counseling someone to get an abortion, say, and then was prosecuted or was sued, sorry, not prosecuted under this law, that they could say, I have a First Amendment right to free speech. And so it would be unconstitutional. I didn't take that particular portion of the law to mean that they could assert third party rights. We're speaking about two different portions of the law, Justice Barrett. There is a portion that says something very closely tracking what you said. There's also subsection F, which says that nothing in the section shall in any way prohibit the limit precluded defendant for certain that defendant's personal constitutional rights as a defense and so on and so on. Personal constitutional rights, not third party rights. And so the clinic's personal rights would differ from the rights of the woman who's the rights holder? There's a different provision, Your Honor, that says that individuals may raise the undue burden rights to the limit allowed by this court specifically. Now, it may be the case that those three provisions don't perfectly line up and bite interpretative forces that at some point, a third party right that's recognized by this court can't be perfectly raised as a state law defense. If so, as in all cases, an individual can raise that particular piece or the entire case as a federal constitutional right, but as a default, state court judges who swear an oath of the constitution just the way that the justices on this court and the lower federal courts do are presumed that they will apply in good faith and they're always subject to correction by this court in any appropriate case. What can't occur is what couldn't occur in, for example, New York Times versus Sullivan or for that matter, Masterpiece Cake Shop. An individual there who thinks that they're going to be subjected to a state court process that's either going to be very difficult for them or otherwise unfair to them in terms of the merits of the decision is not permitted to go to a lower federal court and seek functionally an injunction against the state's trial court. Keep going. I'm coming to the close of my point. I'd be glad to answer your question. Well, I think all these arguments were the same arguments that Minnesota raised in Ex parte Young itself. I mean, you look at the history of that case, it was an extraordinary controversy in the United States and in Minnesota about the federal court review. And that itself didn't exist before Ex parte Young. In other words, that was an extension of pre-existing doctrine to recognize a problem that the chief justice was identifying with deprivation of constitutional rights and chilling on the ability to get judicial review. So Ex parte Young sets out this principle that you can get pre-enforcement review in federal court against state enforcement of laws that are assertively unconstitutional. And 999 times out of a thousand or maybe every time until this case, that's a state executive official. It's a pro forma exercise usually to identify the state executive official. And Justice Kagan points out there's a loophole that's been exploited here or used here, which is the private suits are enforced by state court clerks or extend the principle of Ex parte Young to, in essence, close that loophole. In other words, put aside the language in Ex parte Young for a second. And that is strong for you. I agree. But the principle of Ex parte Young and the whole sweep of Ex parte Young would suggest extending the principle here, arguably. Two points, Your Honor. One, no, precisely because this court has disclaimed the power to create such an innovation in Grupo Mexicano. To the extent that we're still an open question, my friend's arguments on the other side might militate towards having one exception there. This court has already disclaimed the ability to give itself the power to essentially create a novel, non-traditional cause of action. And if the language that we're discussing in Ex parte Young means anything, it means that certainly an injunction running against a state court to prevent the adjudication of a state law case is something entirely foreign. Do you agree that there's state action when the state court clerk dockets the case? State action in the sense of the 14th Amendment, perhaps? Yes. I suppose that a state court clerk taking on a clerk is acting as part of the state in that case. Yes, Your Honor. But the key part here is that my friends on the other side aren't even alleging that the docketing of a petition ordinarily is a violation of the 14th Amendment or is a violation itself. It's the nature that potentially later down the line that SB8 case might in fact be adjudicated negatively against them. A state court clerk, a state court clerk who receives petitions and puts them on the docket, and a state court judge who is required to apply discourse precedence and everything else, they're not article-free adversaries when they're doing that process. They're not committing a wrong. Well, I think the theory is that the enforcement of the law is adverse to the plaintiff's interests and causes injury, and this state official, let's say the clerk, is part of the, within the chain of state officials who have some connection, which is the language from Ex parte Young, some connection to enforcement of the law. But respectfully, Your Honor, that some connection to enforcement was referring to, all the way up the connection, was the Attorney General bringing the suit. To stop the commencement of a suit in the language of Ex parte Young meant an anti-suit injunction against an official to stop them from bringing litigation. Can we go to that question of the Attorney General, which hasn't been raised before? The Attorney General has been sued here. I know that the argument is that it doesn't enforce these laws. The Attorney General here doesn't enforce these laws. But the district court suggested that wasn't true. It has some enforcement authority with regard to SBA's fee-shifting provision concerning any legal challenge to any abortion restriction or regulation, and may also have some constitutional authority under Texas law to enforce Texas law. The Ex parte Young fiction was that if there is an agent who can enforce the law in part or in whole, and they're in suit, then everyone else in the enforcement chain is enjoined. So if every private citizen here has been deputized by the bar those citizens from going into court, just the way it would bar district attorneys or police officers from arresting people once that order has been issued, or district attorneys from prosecuting those people for a violation of the law that a court has found unconstitutional. Until the Attorney General, the representative of the state, is not legal. Two points, Your Honor. We'll say one on the Attorney General's side and then one on the private litigant's side. On the private litigant's side, there is no deputization of individuals. The Attorney General... Assume I disagree because you didn't answer to my satisfaction Justice Thomas's point that I've never seen a tort that doesn't give you redress for your harm, it gives you redress for bringing the suit, a bounty. And whether you need to prove injury for standing is irrelevant to what qualifies you for the bounty, which is injury doesn't qualify you for that. Just bringing the suit does. Speaking only specifically in this case, because I don't want to push back, I understand the direction of your question, Your Honor. The Attorney General, just like every other Texas official, lacks the power to either direct a suit, to order that a suit be dismissed, to intervene in a suit, to otherwise... You don't understand the point. It is part of the enforcement mechanism of the suit. Not the whole, because the state has chosen to deputize an entire swath of citizenry to do that for it, but it retains some direct and indirect enforcement power. So answer the ex parte young fiction. We issue an injunction in the traditional course against an AG, and we expect everybody to understand that they're precluded, who acts on behalf of the state, to be precluded from continuing under an unconstitutional law. The most direct answer to your question is that an injunction running against the Attorney General wouldn't change anything he could do. It wouldn't change any ability to bring a suit, it wouldn't change any ability to stop a suit. He couldn't withdraw it. General Stone, I mean, think about the question in this way. Suppose there were not this private enforcement provision, suppose this were a normal law, you know, a heartbeat law, you would sue the Attorney General, wouldn't you? If the Attorney General were the one charged to sue, I would assume so. And, well, if the Attorney General were the one charged to sue, I mean, the actions would not be brought by the Attorney General, the actions would be brought by local DAs, wouldn't they? Well, Your Honor, the difference is local DAs in Texas are locally elected officials that are not accountable to the Attorney General, so that's, I'm not trying to push back against the hypo, just the fact you've given me fundamentally change whether or not they'd be accountable to the AG in some sort of state law. Are you saying that in a normal heartbeat abortion restriction, a suit against the Attorney General would not be sufficient because local district attorneys are bringing the suits? It would depend on whether or not it was charged by the Attorney General's office to sue or by county DAs who are not elected by, who are not elected, essentially not accountable to the Attorney General in any way. But let's, if I may modify your hypo a little bit and say that... I guess what I was suggesting was that in just the same way that the Attorney General does not have direct line authority over the DAs, but nobody would dream of bringing a challenge to ex parte young in that circumstance, so too the fact that they don't have direct authority over these private delegated, private individuals exercising delegated power shouldn't matter for the same reason. In the example you're describing with county and district attorneys, individuals would be able to bring ex parte young challenges against those individuals to be sure, but not against the Attorney General, and the key difference here would be those individuals, the county attorneys and district attorneys, would ultimately be able to enforce the law by bringing a lawsuit. The reason that we're sort of, the hypos that I'm pushing back against here are that the Attorney General simply doesn't have any control of the procession of SB-8 lawsuits in any way. He doesn't have a mechanism such as in the Key Tam context to take over the litigation. He can't certify that a lawsuit is not in the state's interest or something of that order and order it dismissed. He has none of those sorts of mechanisms whatsoever. Because of that, that can't possibly, at a minimum, redress the injuries of petitioners unless this court were to say that private individuals who have not yet articulated they plan to bring suits or anything like that are somehow agents who are acting in concert with the Attorney General. The problem with that is that, again, we have no authority over them. The basic concept of agency is that there's a principal and an agent, and the agent is responsible to the principal. The principal in this hypothetical, the Attorney General, exercises no supervisory authority whatsoever over putative suit bringers. And we're not acting in concert for the ordinary factual reason that, in fact, we're not being approached. This is just a matter that can also be resolved in the district court if it gets that far. We're not being approached by directing anyone else's litigation. It's individual people are choosing to bring or not bring these in pre-enforcement challenges in state court, I mean. Can I ask you about the implications of your position for other constitutional rights? The amicus brief of the Firearms Policy Coalition says, quote, this will easily become the model for suppression of other constitutional rights, with Second Amendment rights being the most likely targets, end quote. And it could be free speech rights. It could be free exercise of religion rights. It could be Second Amendment rights. If this position is accepted here, the theory of the amicus brief is that it can be easily replicated in other states that disfavor other constitutional rights. Your response? Your Honor, in several of those circumstances, individuals who are concerned that a lack of immediate pre-enforcement federal court access would cause them ruinous liability or otherwise suppress their ability to exercise those rights have turned to Congress and succeeded. The Protection of Lawful Commerce and Arms Act, for example, was specifically passed in response to state tort lawsuits in which there was no immediate federal review that could only, at most, be brought to your attention. Well, for some of those examples, I think it would be quite difficult to get legislation through Congress where you're saying, absent that, that Second Amendment rights, free exercise of religion rights, free speech rights could be targeted by other states in this, using the ex parte young language on 163. And to really infringe those and to put huge penalties to the Chief Justice's hypothetical, say, everyone who sells an AR-15 is liable for a million dollars to any citizen. Uncertain what the Second Amendment status of that ultimately will be, which is where those laws will have to purchase. Would that kind of law be exempt from pre-enforcement review in federal court? My answer is on whether or not the, whether or not federal court review is available does not turn on the nature of the right. So we can put in religious liberty. So we can assume that this will be across the board, equally applicable as the Firearms Policy Coalition says to all constitutional rights? Yes, but I'd add one more point, Your Honor. And you've also said the amount of the penalty doesn't matter. A million dollars per sale. You know, anyone, a state passed a law, anyone who declines to provide a good or service for use in a same-sex marriage, a million dollars sued by anyone in the state, that that's exempt from pre-enforcement review? Again, Your Honor, what we'd have to have, for example, in- Is that a yes or- Yes, I'm sorry, Your Honor. Yes, it is. Yes, that's exempt from pre-enforcement review. In the sense of that federal court's doctrines and Congress's statutes defining the jurisdiction of the federal courts would have to be, would have to be modified by Congress. And General Stone, your answer to Justice Kavanaugh, which is go ask Congress, I mean, isn't the point of a right that you don't have to ask Congress? Isn't the point of a right that it doesn't really matter what Congress thinks or what the majority of the American people think as to that right? Respectfully, Your Honor, the answer to that in both part of Justice Kavanaugh's question is that just as in the other circumstance, just as I'm asking for here for Texas state court judges, we have to assume that other state court's judges are in fact going to faithfully apply the Constitution, its rights, and this court's decisions. It will have to occur through the state court process to be sure, but that is an adequate substitute, an adequate venue- Within the state court process, maybe many years from now, and with a chilling effect that basically deprives people who want to exercise the right from the opportunity to do so in the maybe long-term interim. Please. Thank you. No doubt that's the case in many kinds of lawsuits, including constitutional ones, Your Honor, but no one's thought that litigation delays had constitutional dimension for purposes of expanding access to the federal courts before. I don't think this case should be the first one to start. Thank you, General Stone. I have just one additional question. There was a statement in one of the briefs filed below, not by you, that said, quote, states have every prerogative to adopt interpretations of the Constitution that differ from the Supreme Court's. Does the state of Texas have a position on that? The state of Texas' position, Your Honor, is the courts of the state of Texas will absolutely faithfully apply any decisions of this court as they understand them to apply cases of federal law faithfully, and that the other officers within Texas are bound, likewise, to take the interpretations from this court and federal law and to faithfully implement them. Thank you, Counsel. Justice Thomas? Justice Breyer? Just a quick technical question. In reading Ex Parte Young, I got the impression that the enforcement mechanism was really private shippers or passengers who were supposed to sue the railroad. The Attorney General didn't have any direct power. He just had a kind of residual power. So I looked up the Texas statute. It seems like the Attorney General here has the same kind of residual power. Hard to see that in Ex Parte Young, because it was a contempt case. But I think she's there. And they say, this Attorney General, with just the residual power, we can go and sue. And then all your problems in that case that they didn't appear. And it turned out that the statute nobody enforced, because it had been said to be unconstitutional in the AG's case. So is there a difference I overlooked? Even given all of those provisions, Your Honor, even given all of those facts, nonetheless, this court in Ex Parte Young described an injunction running in state courts and state has no connection whatsoever, not even an attenuated one to the enforcement of that law of SBA. Justice Alito? What can you tell us about the state multi-district litigation? This law was enacted, I believe, in the middle of May. When were those suits filed? Where do they stand now? Are they being delayed as a result of the federal court litigation? How quickly might we expect to see a decision in that case? I can answer some of those questions, Your Honor. They were filed fairly promptly, I believe, just before SB1's or SB8's effective date. There are currently 14 of them proceeding in a multi-district litigation. Their motions for summary judgment are due 10 days from now. So I assume that the judge is acting on a highly expedited schedule as to whether there'll be post-motions practice. Other than that, I couldn't say for you, but I have very little doubt the Texas courts are going to treat this as a case to treat very expeditiously. They were filed around the time when SB8 took effect or around the time when it was enacted, back in May? I believe it was around when SB8 took effect. And are they being delayed as a result of the federal court litigation? It appears that, again, since the motion for summary judgment deadline has been set for 10 even given this court's granted certiorari. My understanding is that they involve only state law claims and that the plaintiffs in those cases have not raised federal constitutional claims. Is that correct? That's incorrect, Your Honor. At least one of the litigants is Planned Parenthood, where they have raised explicitly the federal constitutional undue burden defense. So I know at least in that one. I couldn't swear to each of the others, but I know in that one they're certainly explicitly raising this court's articulation of the case you write. Thank you. Justice Sotomayor? Counsel, Grupo Mexicana talked about equitable remedies involving private parties. In 1789, we had just created a new system of government. So we never had an Ex parte Young or any other injunctive relief between governments because we didn't have anything like this before in England or anywhere else, the system of government we have created. Now, I take and I listen to what Ex parte Young said about not interfering with the work of the coordinate branches, ongoing work of the coordinate branches. But one thing that we said in Cooper v. Aaron was equally important, and that is constitutional rights declared by this court can neither be nullified openly and directly by state legislatures or state executives or judicial officers, and these are the key words, nor indirectly through evasive schemes. So given what I just said, that that principle is inherent in the Constitution, why am I limited by Grupo Mexicana? Why would I be looking to a history that can't exist by its very nature? What does exist are the words we said in Ex parte Young, which was we are charged by Congress in ensuring that federal rights are respected directly or we're limited by anything in terms of what an equitable remedy would be like, assuming we were to find, and you can challenge the assumption but you'll waste your time, assuming we were to find that this scheme was intended to chill abortions that were constitutional. So taking all of the assumptions that I'm obligated to, Your Honor, at a minimum this court's statement in Grupo Mexicana saying that Congress was the one that vested the federal courts with equitable jurisdiction in the first place suggests that whatever equitable jurisdiction occurs in the courts occurs because Congress gave it to them. The court recognized their limitation in Grupo Mexicana that I don't understand that it was across a public-private distinction, but was across separation of powers distinction between whether or not this court or Congress had to expand beyond traditional equitable remedies available. And if nothing else from Ex parte Young is significant on this point, the one thing that the violates our scheme of government point is relevant for is that plainly is indication that that kind of injunction is not traditional equity. Justice Kagan? Justice Gorsuch? Just a couple questions. With respect to the MDL that Justice Alito was asking about, is there anything in that proceeding that would prohibit parties from bringing a pre-enforcement action against Texas's law for violating the Constitution? No, Your Honor. In fact, again, there are individuals who are raising pre-enforcement challenges. So there is a pre-enforcement action in state court on this issue now? Right now, yes. And there's nothing to prohibit them from bringing one? Nothing to prohibit them whatsoever other than identifying a private plaintiff who's made a reasonable threat. And then on the chilling effect question, it's been suggested that the chilling effect here is different in kind because of bounties and the involvement of private persons. And I'd like you to address that. Often constitutional rights, of course, can only be enforced in a defensive posture when an individual is faced either with potential liability, punitive damages, but also, of course, civil fines and even criminal sanction, including prison time. And I guess I want to understand your argument as to why this is or is not different in kind. Well, Your Honor, it's certainly not different in kind. In fact, it's much milder in degree than a variety of the constitutional rights we've been discussing in the state court, potential downside risks from failing in state court litigation. Again, in New York Times v. Sullivan, there was a quite a great deal of exposure potentially from that defamation action, individuals suffering potentially criminal sanctions for Second Amendment rights all the time. $10,000 liquidated damages provision and potentially a fee-shifting mechanism on top of it is comparatively mild compared to, again, incarceration for asserting a Second Amendment right. Realistically, none of the complaints about the plaintiff-favoring procedural rules in SBA would amount to anything even considering a procedural due process violation if this law were about making widgets. They're only sort of sideways way of casting procedural due process aspersions on an attempt to get fundamentally a substantive due process pre-enforcement challenge. Thank you. Just a quick... I want to follow up on Justice Gorsuch's question about the pre-enforcement challenges in state court, and you said it's just a matter of finding a private plaintiff to sue. Is that right? A private individual who holds them out that they're going to sue because... Right. So, in the state court, then, if I understand that answer you gave to Justice Gorsuch, the same problems that pervade this pre-enforcement challenge exist there, that if they identify a private potential plaintiff who expresses the intent to sue, the injunction would run only against that one plaintiff, and we would have all these same problems because the attorney general can't be sued in state court. So, it doesn't resolve... It's not ex parte Young style, I guess, is what I'm asking. No more than that. Probably there's no such ex parte Young remedy against individuals generally. Now, if multiple people acted in concert, they could all be joined. I will say there is one feature of this law that has been brought up before, which is that if an individual who has an action brought against them pays the statutory damages amount, then no further liability can be brought by anyone for that same act, and so that would extinguish the down-the-line possibility of sort of an infinite series of lawsuits. For that one abortion, but I guess what I'm getting at, and I think the answer, because you're shifting, is that you cannot get kind of global relief in the same way the pre-enforcement challenge under ex parte Young in federal court gives you relief from the prospect that the statute would be enforced against you, and you're saying that in state court, these pre-enforcement actions do not offer that, but just on an individual-by-individual basis. Yes, Justice Barrett, the same way that an injunction against all individuals known or to that court. You've answered my question, thanks. Thank you, counsel. Rebuttal, Mr. Heron? I'd like to begin by picking up on the point that, or the question that Justice Barrett was just pending, state court proceedings, any relief would be against only those defendants who were sued in those proceedings, the private defendants, they're not the state, and in fact, the defendants that are acting strategically in order to preclude any broader review, they've now stipulated to temporary injunctions in order to prevent an injunction that might then get appealed and get broader relief from the higher courts. And the other point about all this is, and this is another special feature of SB 8, which is that normally in Texas law, Texas has a declaratory judgment act that allows citizens to sue the state of Texas or the state agency under the Texas declaratory judgment act to get that broader relief, and in SB 8, in section 171.211, SB 8 overrides the state declaratory judgment act and reassert sovereign immunity to prevent exactly that kind of lawsuit against the state to seek broader review in state courts. On the concern about post-viability abortions, I don't think that that's a concern for the court, partly because the petitioners do not provide post-viability abortions, and under this court's precedent in whole women's health, that doesn't preclude a statute from being declared facially unconstitutional, so I don't think that that's a concern that the court needs to deal with. But at the end of the day, what the state of Texas and what my friends on the other side are saying is that clinics should just violate the law. They should go out there, they should go about business as usual, and subject themselves to the risk that they will be forced to close their doors. But I want to make clear, your honors, that this is not just a decision for clinics to make. Even if clinics and health centers decided to violate the law, they may not find physicians, nurses, ultrasound technicians, staff members willing to work behind the desk, because this law targets all of them. Every single person would have to make the decision, am I willing to subject myself to the risk of $10,000 or more, it's a minimum, liability per abortion, plus the risk that I'm going to be hailed into suits all across the state, and I'm going to have my ability to have an attorney taken away from me because my attorney may have to pay attorney's fees. Every single person, and that's exactly what this court addressed in Ex parte Young. Ex parte Young, and the reason the principles underlying Ex parte Young support relief here, is one of the things that it said is that the railroad may not be able to find an agent or an employee even willing to violate the law to generate a test case. And so, your honor, for all reasons that we've stated, we think the principles of Ex parte Young support relief here, and we ask that the district court's decision be affirmed. Thank you, counsel. The case is submitted.